UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASSAN ALI,<br><br>        Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | No.  EDCV 04-1106-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On September 13, 2004, Hassan Ali ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for disability insurance benefits. On October 18, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on March 22, 2005, defendant filed an Answer to Complaint. On July 11, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On or about August 26, 1998, plaintiff filed an application for Supplemental Security Income payments. (Administrative Record ["AR"] at 163-64). Plaintiff alleged that beginning on October 27, 1997, he was unable to work because he suffered from the following impairments: vertigo, vestibular syndrome, severe headaches, and stomach problems. (AR at 178). The Commissioner denied plaintiff's application for benefits, initially and upon review. (AR at 127, 153-56).

On or about March 17, 2000, plaintiff filed a second application for Supplemental Security Income payments. (AR at 165-66). Plaintiff alleged that beginning on October 27, 1997, he was unable to work because he suffered from the following impairments: vertigo, vestibular syndrome, severe headaches, stomach problems, and neurological problems related to a damaged ear condition. (AR at 169). The Commissioner denied plaintiff's application for benefits, initially and upon review. (AR at 126, 149-52). On April 7, 2001, plaintiff filed a Request for Hearing by Administrative Law Judge. (AR at 157).

On June 6, 2002, Administrative Law Judge ("ALJ") Milan Dostal conducted a hearing in Orange, California. (AR at 69-125). Plaintiff appeared at the hearing and testified. (AR at 71-86). Jocelyn Bailey, M.D., a medical expert, and Jeanine Metildi, a vocational expert, also appeared and testified. (AR at 86-113, 113-123).

On September 12, 2002, the ALJ issued his decision denying benefits. (AR at 39-44). In his decision, the ALJ concluded that plaintiff suffered from migraines, dizziness, diabetes mellitus, and conversion order, but that none of these impairments were severe within the meaning of the Social Security Regulations. (AR at 43).

1  Ultimately, the ALJ found that plaintiff was not disabled pursuant to
2  the Social Security Act and that he retained the residual functional
3  capacity to perform his past relevant work as a lab technician or an
4  agricultural engineer. (AR at 43).

5  On November 1, 2002, plaintiff filed a request with the Appeals
6  Council for review of the ALJ's decision. (AR at 33). Thereafter,
7  plaintiff submitted additional evidence to the Appeals Council,
8  consisting of treatment records from UCLA Medical Center and
9  statements from plaintiff. (AR at 13-25). The Appeals Council
10 subsequently affirmed the ALJ's decision. (AR at 6-8).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the parties' Joint Stipulation:

1. The ALJ erred by failing to find that the migraines associated with plaintiff's headaches were a severe impairment.

2. The ALJ failed to find that plaintiff's conversion disorder was a severe impairment.

3. The ALJ erred by failing to make proper credibility findings as to plaintiff's testimony.

4. The ALJ's hypothetical questions were vague, ambiguous, and insufficient for a finding of vocational ability.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence

3

1  means "more than a mere scintilla" but less than a preponderance.
2  Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.
3  Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.
4  1988).

5  　　　Substantial evidence is "such relevant evidence as a reasonable
6  mind might accept as adequate to support a conclusion." Richardson,
7  402 U.S. at 401. This Court must review the record as a whole and
8  consider adverse as well as supporting evidence. Green v. Heckler,
9  803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible
10 of more than one rational interpretation, the ALJ's decision must be
11 upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.    The Sequential Evaluation**

　　　The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. Id. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. Id. at 140-41. Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. Id. at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Id. If the impairment is not one that is conclusively presumed to be

disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. Bowen, 482 U.S. at 141. If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. Id. at 142. The claimant is entitled to disability benefits only if he is not able to perform such work. Id.

**B.     Whether Plaintiff's Migraines Constituted a Severe Impairment**

Plaintiff contends that the ALJ erred in finding that plaintiff's migraine headaches did not constitute a severe impairment. According to plaintiff, the ALJ ignored the medical evidence in the record with regard to the severity of his migraines.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as "understanding, carrying out, and remembering simple instructions" and "responding appropriately to supervision, co-workers and usual work conditions." 20 C.F.R. § 404.1521(b)(3)-(4); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen, 80 F.3d at 1290 (quoting Yuckert, 841 F.2d at 306). The severity inquiry at step two is a de minimus screening device, intended to allow the Commissioner to dispose of groundless claims. Bowen v. Yuckert, 482

5

U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

Here, the ALJ erred in finding that plaintiff's migraines did not constitute a severe impairment. First, a number of physicians noted that plaintiff suffers from migraines, which sometimes results in dizziness. Tony Chow, M.D., an attending physician at the emergency room, examined plaintiff and found that he had a history of vertigo and headaches, notwithstanding his suspicions of malingering. (AR at 268-69). Gabriel Fabella, M.D., an internist, was unable to complete her examination of plaintiff because he became dizzy and could not continue with the examination. (AR at 262-65). Ralph A. Nelson, M.D., of the House Ear Clinic, Inc., diagnosed plaintiff with dizziness. (AR at 295). On August 9, 2000, Sarah L Maze, M.D., conducted a Neurological Evaluation in which she listed her impressions of plaintiff as having chronic head pain and subjective complaints of dizziness. (AR at 317-21). On October 18, 2000, Mark D. Pierce, Ph.D., conducted a Psychological Evaluation on plaintiff, whereby he diagnosed plaintiff with dizziness, by report. (AR at 322-30). On July 29, 2002, Dr. Pierce re-examined plaintiff and diagnosed him with "Complaints of migraine-related dizziness, deferred to the appropriate medical professionals." (AR at 392-99). On July 18, 2000, Andrew Oh, M.D., wrote that plaintiff "meets diagnostic criteria for migraine.... I think that this patient's episodes represent migraine-related dizziness." (AR at 333-34). Dr. Oh, however, re-examined plaintiff on January 16, 2001 and opined that his "severely impaired psychosocial functioning is out of proportion to that usually seen in migraineurs." (AR at 411).

The ALJ found that plaintiff's subjective complaints were not persuasive, particularly in view of the "strong evidence of

malingering as noted on multiple examinations in the record." (AR at 42). For that reason, among others, the ALJ rejected plaintiff's credibility. But whether there was enough evidence to find that plaintiff's migraines and dizziness sufficiently impacted his ability to do work is a separate issue. At the hearing, a medical expert, Dr. Bailey, testified that, "[D]izziness is a very common complaint that is very – almost – impossible to diagnosis [sic] much of the time. And so it's just treated empirically with Antivert, which he was given somewhere, meclizine, because nobody can ever really figure out why people are dizzy. It comes and goes." (AR at 93).

After the ALJ issued his decision, plaintiff consulted two specialists in the field of neurology, Dee E. Silver, M.D., and J. Steven Poceta, M.D. Dr. Silver diagnosed plaintiff with "[p]ossible migraine with associated dizziness" and definitively concluded that plaintiff was disabled. (AR at 15-17). With regard to plaintiff's migraines, Dr. Silver wrote, "[Plaintiff] certainly has chronic daily headaches and multiple other symptoms that are disabling to him." (AR at 17). Dr. Silver further opined, "I definitely feel the patient is disabled." (AR at 17). The second specialist, Dr. Poceta, examined plaintiff and opined that his migraine associated dizziness was severe. (AR at 19-21). Dr. Poceta wrote, "[Plaintiff] has severe and disabling dizziness and vertigo associated with migraine and I believe he meets criteria for migraine-associated dizziness.... I do not believe he is malingering. I believe he is disabled on the basis of migraine associated dizziness and possibly conversion disorder causing gait disturbances." (AR at 20).

Thus, notwithstanding suspicions from other physicians that plaintiff exaggerated his symptoms (AR at 269, 320, 329, 389, 398,

1  411), two neurologists found that plaintiff was suffering from
2  migraines and dizziness to an extent that disabled him. (AR at 17,
3  20, 295, 333). The foregoing is sufficient to meet the de minimus
4  standard that must be applied to the Step Two severity inquiry. See
5  Bowen, 482 U.S. at 153; Smolen, 80 F.3d at 1290.

6  Finally, plaintiff has consistently taken medications to treat
7  both his migraines and its associated dizziness. For example,
8  plaintiff reported taking Tylenol[1], Motrin[2], Naproxen[3], Fiorinal[4],

---

[1] "This drug is used to relieve mild to moderate pain and to reduce fever." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Tylenol"; then follow "Tylenol Oral" hyperlink).

[2] Motrin is a brand name of the medication Ibuprofen. "Ibuprofen is a nonsteroidal anti-inflammatory drug (NSAID), which relieves pain and swelling (inflammation). It is used to treat headaches, muscle aches, backaches, dental pain, menstrual cramps, arthritis, or athletic injuries." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Motrin"; follow "Motrin Oral" hyperlink; then follow "Ibuprofen - Oral" hyperlink).

[3] "Naproxen is a nonsteroidal anti-inflammatory drug (NSAID), which relieves pain and swelling (inflammation). It is used to treat headaches, muscle aches, backaches, tendonitis, bursitis, dental pain, menstrual cramps, arthritis, or gout." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Naproxen"; follow "Naproxen Oral" hyperlink; then follow "Naproxen – Oral" hyperlink). Plaintiff has also taken Naprosyn and Aleve, which are brand names of the medication Naproxen.

[4] "This medication is a pain reliever and sedative. It is used to relieve mild to moderate pain and tension headaches." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Fiorinal"; then follow "Fiorinal Oral" hyperlink).

Fioricet with Codeine[5], Meclizine[6], and Compazine[7], medications for general pain, headaches, and vertigo. (AR at 263, 268, 292, 318, 333, 387, 407). The ALJ cited plaintiff's lack of compliance with medications as another reason to reject plaintiff's credibility. But the ALJ relies on a single notation in Dr. Oh's records, dated January 16, 2001, in which Dr. Oh noted that although plaintiff had some improvement in his migraine-related dizziness, he was not taking his medication on a regular basis. (AR at 331). But the medical records show that in 2002 plaintiff was taking numerous medications such as Fiorinal, meclizine, and Naprosyn for his migraine-related dizziness. (AR at 407).

**C.    Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. <u>McAlister v. Sullivan</u>, 888

---

[5] "This combination medication contains a narcotic pain reliever, acetaminophen (a non-aspirin pain reliever), caffeine and butalbital. Caffeine is used to enhance pain relief, especially in certain types of headaches. Butalbital provides a calming effect. This combination medication is used to relieve moderate to severe pain." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Fioricet Codeine"; then follow "Fioricet-Codeine Oral" hyperlink).

[6] "This medication is used to prevent or treat nausea, vomiting and dizziness caused by motion sickness or middle ear infections." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Meclizine"; then follow "Meclizine Oral" hyperlink).

[7] Compazine is a brand name of the medication Prochlorperazine. "This medication is used to control nausea and vomiting or for certain mental or mood conditions." http://my.webmd.com/medical_information/drug_and_herb/default.htm (search "Find A Drug, By Name" for "Compazine"; follow "Compazine Oral" hyperlink; then follow "Prochlorperazine Oral" hyperlink).

9

F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. McAlister, 888 F.2d at 603; Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993), or where remand would unnecessarily delay the receipt of benefits. See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

In this case, the Court finds remand appropriate. On remand, the ALJ must determine whether plaintiff's severe impairment meets or equals a listed impairment. On remand, at the step two inquiry, the ALJ must consider the combined effect of all plaintiff's impairments on plaintiff's ability to function, without regard to whether each alone was sufficiently severe. See Smolen, 80 F.3d at 1290. The ALJ must then determine whether the impairment prevents plaintiff from performing work he has performed in the past. If plaintiff cannot perform his past work, the ALJ must finally determine whether he is able to perform other work in the national economy in light of his age, education and work experience.[8]

---

[8] Plaintiff has raised other claims of error regarding the ALJ's decision, namely, that the ALJ failed to find plaintiff's conversion disorder a severe impairment, the ALJ erred by failing to make proper credibility findings as to plaintiff's testimony, and ALJ's hypothetical questions were vague, ambiguous, and insufficient for a finding of vocational ability. On remand, the
(continued...)

1 **ORDER**

2 The Court, therefore, VACATES the decision of the Commissioner of
3 Social Security Administration and REMANDS the case for further
4 administrative proceedings consistent with the Memorandum Opinion and
5 Order.

6 **LET JUDGMENT BE ENTERED ACCORDINGLY**

7 DATED: December 13, 2005

```
                                      /s/
                           JENNIFER T. LUM
                           UNITED STATES MAGISTRATE JUDGE
```

---

[8](...continued)
ALJ should consider all plaintiff's remaining arguments.